UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**JOHN PATRICK STOKES**,<br><br>Debtor.<br><br>**GREGORY DUNCAN** and<br>**KATHLEEN M. GLOVER**,<br><br>Plaintiffs.<br>-vs-<br><br>**JOHN PATRICK STOKES**,<br><br>Defendant. | Case No. **09-60265-7**<br><br><br><br><br><br>Adv No. **12-00052** |

# MEMORANDUM OF DECISION

At Butte in said District this 8th day of February, 2013.

Pending in this adversary proceeding seeking a declaratory judgment are: Plaintiffs' motion for summary judgment (Docket No. 11); and Defendant's objection thereto and motion to dismiss for lack of subject matter jurisdiction (Dkt. 18). Trial is scheduled to begin on March 7, 2013. The parties have submitted their respective statements of uncontroverted facts and issues, and supporting briefs, which have been reviewed by the Court together with applicable law. These matters are ready for decision. For the reasons set forth below, Defendant's objection is overruled and Defendant's motion to dismiss for lack of jurisdiction is denied; Plaintiffs' motion for summary judgment is granted and a separate Judgment shall be entered against the Defendant John Patrick Stokes ("Stokes") declaring that Stokes' state law claims for relief against the Plaintiffs in Cause No. CDV 2012-156 in the Montana First Judicial District Court, Lewis and

1

Clark County, were assets of Stokes' bankruptcy estate which were sold to the Plaintiff Gregory Duncan by the bankruptcy trustee in a sale approved by the Court after notice.

This Court concludes that it has jurisdiction of the above-captioned adversary proceeding under 28 U.S.C. § 1334(b) as related to the above-captioned bankruptcy case. Further, the Court concludes that Plaintiffs' petition for declaratory judgment is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (2)(O) concerning the administration of Debtor's estate or other proceeding affecting the liquidation of assets of the estate. This Memorandum includes the Court's findings of fact and conclusions of law under F.R.B.P. 7052 (applying Rule 52, FED. R. CIV. P. in adversary proceedings).

## FACTS & PROCEDURAL HISTORY

Plaintiffs filed a Statement of Uncontroverted Facts on December 17, 2012 (Dkt. 13) setting forth the following:

 1. In February 2009, Mr. Stokes retained Mr. Duncan as his attorney to help him petition for Chapter 11 bankruptcy relief. (Adv. Pro. No. 12-00052, Dkt. No. 1, Ex. A.)

 2. On March 4, 2009, Mr. Stokes commenced the above-entitled bankruptcy case, by filing a Voluntary Petition for relief under Chapter 11 in this Honorable Court ("Bankruptcy Court"). (Bankr. Case No. 09-60265-7, Dkt. No. 1.)

 3. On June 5, 2009, Mr. Duncan petitioned the Bankruptcy Court to withdraw as Mr. Stokes's counsel. (Bankr. Case No. 09-60265-7, Dkt. No. 48.)

 4. On June 18, 2009, Mr. Duncan's motion to withdraw was granted. (Bankr. Case No. 09-60265-7, Dkt. No. 55.)

 5. On September 21, 2009, Mr. Richard J. Samson was appointed to serve as the Trustee of the bankruptcy case. (Bankr. Case No. 09-60265-7, Dkt. No. 101.)

6. On the same date, September 21, 2009, on Mr. Samson's motion, Mr. Stokes's bankruptcy case was converted to a Chapter 7 proceeding. (Bankr. Case No. 09-60265-7, Dkt. No. 98.)

7. On February 28, 2012, Mr. Stokes filed a complaint in Montana's First Judicial District Court, Cause No. CDV 2012-156, against Mr. Duncan alleging specific monetary damages for legal malpractice (Count I), breach of contract (Count II), and breach of fiduciary duty (Count III). (Adv. Pro. No. 12-00052, Dkt. No. 1, Ex. A.)

8. On April 26, 2012, Mr. Samson intervened and moved to stay the state court proceeding because the Bankruptcy Court had exclusive jurisdiction to determine the property of the estate. (Adv. Pro. No. 12-00052, Dkt. No. 1, Ex. B.)

9. On May 30, 2012, the Honorable Kathy Seeley granted Mr. Samson's motion to stay its proceedings "until a final determination as to what property qualifies as property of the estate is made by the Bankruptcy Court, Case # 09-60265." (Adv. Pro. No. 12-00052, Dkt. No. 1, Ex. D.)

10. On July 26, 2012, the Bankruptcy Court entered an order authorizing Mr. Samson to sell the bankruptcy estate's interest in Mr. Stokes's state claims at issue, if any, through a bid procedure with the purpose of maximizing the value of the estate. (Bankr. Case No. 09-60265-7, Dkt. No. 408.)

11. On July 27, 2012, Mr. Samson filed a Notice of Intent to Sell the estate property interest in Mr. Stokes's state causes of action against Mr. Duncan through an auction sale. (Bankr. Case No. 09-60265-7, Dkt. No. 409.)

12. On August 14, 2012, Mr. Samson amended his July 31, 2012 motion for the bankruptcy court to approve the compromise under Rule 9019, F.R.B.P. (Bankr. Case No. 09-60265-7, Dkt. No. 420.)

13. On August 14, 2012, "[u]pon review[ing] the Trustee's Notice of Intent to Sell Estate Property at Auction Sale . . . and no objections or requests for hearing as to the proposed sale hav[ing] been filed or requested with the Court," the Bankruptcy Court entered an Order authorizing the Trustee to sell the bankruptcy estate's interest, if any, in the "pending proceeding filed in the Montana First Judicial District Court, Lewis & Clark County, Cause No. CDV 2012-156 and styled as John Patrick Stokes, Plaintiff vs. Greg W. Duncan and Kathleen M. Glover, Defendants." (Bankr. Case No. 09-60265-7, Dkt. No. 419.)

14. On August 16, 2012, Mr. Samson filed a notice of the pending

      compromise, giving any party an opportunity to file an objection by August 30, 2012. (Bankr. Case No. 09-60265-7, Dkt. No. 423.) No objection was ever made.

      15. On August 22, 2012, Mr. Samson sold to Mr. Duncan the bankruptcy estate's interest in the malpractice action, and thereafter filed a Report of Sale with the Bankruptcy Court demonstrating the sale to Mr. Duncan. (Bankr. Case No. 09-60265-7, Dkt. No. 434.)

      16. On September 6, 2012, the Bankruptcy Court issued its order to approve the compromise under Rule 9019, F.R.B.P. (Bankr. Case No. 09-60265-7, Dkt. No. 435.)

Plaintiffs filed with their Statement of Uncontroverted Facts a supporting brief contending that Stokes' legal malpractice claim arose in his bankruptcy case and is a core proceeding, so this Court has jurisdiction and may enter a declaratory judgment that Stokes' state law claims for legal malpractice are property of the estate and remained property of the estate after the case was converted to Chapter 7. Plaintiffs ask for declaratory judgment that Stokes' state law claims are barred by the claim preclusive effect of this Court's approval of the Trustee's sale of the claims to Plaintiffs.

In response, Defendant filed on January 4, 2013, a Statement of Genuine Issues asserting the following:

      1. Plaintiffs' uncontroverted fact no. 6 is wrong in that it states that the Chapter 7 Trustee filed a motion to convert this case to chapter 7. That motion was filed by the U.S. Trustee's office. Docket no. 24 in 09-60625.

      2. Plaintiffs' uncontroverted fact no. 12 fails to state that the notice given by the Trustee was to sell the estate's interest, if any, in the malpractice claim, and that there was no warranty that the estate had an interest in the claim. Docket no. 409 in 09-60265.

      3. Plaintiffs' uncontroverted fact no. 15 fails to state that the Trustee sold the claim, "if any," to Greg Duncan, that it was sold "as is" and without any representation or warranty that the estate had an interest in the claim. Exhibit F to Plaintiffs' complaint.

4

>    4. Plaintiffs' uncontroverted facts nos. 12, 14, and 15 concern a dispute between the estate and Wade Dahood and those facts and underlying documents have no discernable relationship to the matters at issue in this proceeding.

Stokes complains that Plaintiffs' statement of uncontroverted facts is unsupported by any affidavit in support, although he admits that "there probably is not a dispute as to material facts in this case ...."  Also on January 4, 2013, Stokes filed a motion to dismiss this adversary proceeding for lack of subject matter jurisdiction, and a supporting brief in opposition to summary judgment and in support of his motion to dismiss.  Stokes argues that his state law claims did not come into existence until after the date the case was converted to Chapter 7 and so are not property of the estate because of the provisions of 11 U.S.C. § 1306 and 11 U.S.C. § 348(f), which he argues controls 11 U.S.C. § 1115, and because his damages did not occur until after the case was converted to Chapter 7.  Stokes further argues that this Court no longer has jurisdiction to determine whether the estate owned the claim because any jurisdiction this Court had was lost when the claims were sold, and now the state court must resolve the ownership question.

Plaintiffs filed a reply brief repeating that this Court has jurisdiction to enforce its Order approving the sale of the estate's claims to Plaintiffs, and that Stokes' state law claims against them were at all times considered property of the estate.  Plaintiffs point out that Stokes submitted a bid to purchase the estate's state law claims, and should be barred by judicial estoppel from asserting that they are not property of the estate.

## DISCUSSION

The Court begins by noting that the petition for declaratory judgment, in essence, asks this Court to enforce its Order approving the sale of Stokes' state law claims to Plaintiff Greg W.

5

Duncan ("Duncan"), when he outbid Stokes at auction. Stokes did not seek reconsideration of the Order approving the sale, and did not file a notice of appeal. Stokes argues that this Court lacks jurisdiction to enforce its own order approving the sale of the estate's claims to Duncan. Pursuant to § 105(a), the bankruptcy court is authorized to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *In re Reinertson*, 241 B.R. 451, 455 (9th Cir. BAP 1999). This Court has long recognized its powers to enforce its orders under the last sentence of § 105(a): "No provision of this title proving for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *In re Becker*, 17 Mont. B.R. 75, 77-78 (Bankr. D. Mont. 1998). To the extent necessary to enforce its orders, this Court has power under § 105(a). *Id.*

### I. Summary Judgment.

Summary judgment is governed by F ED. R. B ANKR. P. 7056. Rule 7056, incorporating F ED. R. C IV. P. 56(c), states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)).

When seeking summary judgment, the moving party must initially identify those portions

of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might

return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

Applying this standard, the Court finds and concludes that Plaintiffs satisfied their initial burden to identify those portions of the record which they believe establish an absence of issues of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d at 630. Plaintiffs listed the above-quoted facts in their Statement of Uncontroverted Facts, with references to the docket numbers in Stokes' bankruptcy case which establish an absence of genuine issues of material fact with respect to the sale of the estate's state law claims. The burden shifted to Stokes opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d at 1103-04. Stokes failed to satisfy that burden in his Statement of Genuine Issues. In fact, his brief states "there probably is not a dispute as to material facts in this case . . . ."

Stokes first observes that the motion to convert was filed by the U.S. Trustee, not the Trustee. That is not a material issue, because the case was converted to Chapter 7 regardless. Neither is it material that the Trustee sold the estate's state law claims "as is" and without any warranty that the estate had an interest in the claim. Whether the claims are property of the estate is a matter of federal bankruptcy law, not what the Trustee warrants. Stokes is correct that Plaintiffs' statement of fact nos. 12, 14 and 16 refer to an unrelated settlement between the Trustee and attorney Wade Dahood and his firm of Knight, Dahood, Everett & Sievers. However, the inclusion of irrelevant facts does not create a genuine issue of material fact for trial.

To demonstrate that a genuine factual issue exists Stokes was required to produce

affidavits which are based on personal knowledge, and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. Stokes argues that factual disputes may be in existence between the parties, but he cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-48, 106 S.Ct. at 2510. Based upon Stokes' failure to show that genuine issues of material fact exist, the Court finds that no genuine issues of material fact exist, and the inquiry shifts to whether the moving parties are entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

**II. Property of the Estate.**

Stokes' argues that his state law claims against Plaintiffs were not property of the estate, even though he bid for them at auction. This Court discussed the test used in this district for determining property of the estate in *Crum v. Tomlinson (In re Hettick)*, 413 B.R. 733, 752 (Bankr. D. Mont. 2009):

> This Court in [*Boland v. Crum, et al. (In re Brown)*, 363 B.R. 591, 604-05 (Bankr. D. Mont. 2007)] set forth the current test used in this district for determining property of the estate:
>
>> Section 541 defines property of the bankruptcy estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1).
>
> *In re Folks*, 211 B.R. 378, 384 (9th Cir. BAP 1997).
>
> Therefore, assets of the estate properly include any of the debtors' causes of actions. *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001); *see also United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 2313 n. 9, 76 L.Ed.2d 515 n. 9 (1983) (Citing to comments made in the House and Senate Reports on the Bankruptcy Code, "[t]he scope of this paragraph [§ 541(a)(1) ] is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act § 70a(6)), and all other forms of property

currently specified in section 70a of the Bankruptcy Act. H.R.Rep. No. 95-595, p. 367 (1977); S.Rep. No. 95-989, p. 82 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5868, 6323."); *In re Moore*, 110 B.R. 924, 925- 926 (Bankr. C.D.Cal 1990)(lender liability action by debtor against bank is estate property); *Gandy v. Peoples Bank and Trust Co*., 224 B.R. 340, 345 (S.D.Miss. 1998)(debtor's lawsuit, instituted after discharge, based on allegedly unlawful insurance premiums and interest in connection with a pre-bankruptcy loan, was estate property).

If the cause of action accrued prior to a debtor's petition date, it is an asset that must be scheduled. *Cusano*, 264 F.3d at 947. Unscheduled claims pass to the trustee and are not abandoned, *Welsh v. Quabbin Timber, Inc.*, 199 B.R. 224, 229 (D.Mass. 1996), even though the estate is closed or the plan is confirmed. *Dixon v. First Family Financial Services*, 276 B.R. 173, 181 (S.D.Miss. 2002), *abrogated on other grounds, Reed v. Mississippi Farm Bureau Mut. Ins. Co*., 299 B.R. 804 (S.D.Miss. 2003)("It is axiomatic that, without disclosure of property, it can be neither abandoned nor administered."); *see also, Tilley v. Anixter Inc*., 332 B.R. 501, 508 (D.Conn. 2005)(closure of an estate does not result in abandonment of unscheduled claim); *An-Tze Cheng v KMS Diversified Investments, Inc.*, 308 B.R. 448, 459-60 (9th Cir. B.A.P. 2004) (trustee may reopen case to administer omitted asset); 11 U.S.C. § 554. Abandonment cannot occur without notice to creditors and a hearing. *Sierra Switchboard Co. v. Westinghouse Elec. Corp*., 789 F.2d 705, 709 (9th Cir. 1986).

Moreover, the accrued cause of action is property of the estate even if the debtors were unaware of the claim when they filed for bankruptcy protection. *See Miller v. Pacific Shore Funding*, 287 B.R. 47, 50 (D.Md. 2002) ("Even a cause of action that the debtor, when filing the petition, did not know the law granted belongs to the estate. ... Property of the debtor does not escape the bankruptcy estate merely because the debtor is unaware of its existence.") A later recovery on the claim is derivative of the cause of action and therefore also property of the estate. *In re Smith*, 293 B.R. 786, 788 (Bankr. D.Kan. 2003); *In re Ballard,* 238 B.R. 610, 624 (Bankr. M.D.La. 1999).

*Brown*, 363 B.R. at 604-05.

Stokes argues that he did not suffer damages from Plaintiffs' malpractice until after the case was converted to Chapter 7. However, his complaint against Plaintiffs in the state court action CDV 2012-156 avers that Plaintiffs are liable for failing to properly advise Stokes of the detrimental impact that a bankruptcy filing would have on his appeal, as to which debts could be

discharged, and that they improperly prepared and filed his schedules. Much of this alleged malpractice took place prior to the filing of his Chapter 11 petition. Given the broad scope of § 541(a)(1) and the above-quoted language from *Hettick* and *Brown*, and cases cited therein, this Court concludes that Stokes' legal malpractice claims asserted in CDV 2012-156 are property of the estate.

In addition, even if § 541(a)(1) were not broad enough to include Stokes state law claims, the estate's interest is expanded by § 541(a)(7) to included "[a]ny interest in property that the estate acquires after the commencement of the case." When construing the meaning of a statute we are guided by *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002):

> The first and most important step in construing a statute is the statutory language itself. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We look to the text of the statute to "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). Our inquiry ceases if from the plain meaning of the statute congressional intent is unambiguous, and the statutory scheme is coherent and consistent. *Id.*

Section 541 being unambiguous, our inquiry under that section ceases. It is yet further reinforced by 11 U.S.C. § 1115(a)(1) which includes as property of the estate in addition to that specified in § 541 "all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first." A fair reading of the complaint in CDV 2012-156 shows clearly that the malpractice in the form of advice and preparation of Stokes' schedules occurred prior to the filing of the chapter 11 petition, with further malpractice after the petition. Stokes argues that he did not suffer damages until after the case was converted to

11

Chapter 7, but the facts submitted by the parties do not support that argument. The damage was done by the time the case was converted.

Stokes contends that case law construing property of the estate under 11 U.S.C. § 1306 and § 348(f) should govern how this Court construes property of the estate under § 1115. However, this case has never been under Chapter 13, and § 348(f)(1) is limited by its terms to "when a case under chapter 13 of this title is converted ...." "Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993) (internal quotation marks and alterations omitted). If Congress had intended for § 348(f) to apply to chapter 11 cases it would have drafted it accordingly to include a reference to chapter 11 subsections, such as it did in § 348(b), (c), (d) and (e). Since § 348(f) has no reference to Chapter 11 this Court presumes Congress acted intentionally and purposely in excluding it from § 348(f).

Stokes himself believed that the malpractice claims were property of the estate enough to submit the initial bid to purchase them from the Trustee. Based on that and the above, this Court concludes that Stokes' state law claims in CDV 2012-156 were property of the estate purchased from the estate by the Plaintiff Duncan.

### III. Jurisdiction.

This Court has exclusive jurisdiction of all cases in under Title 11, U.S.C. 11 U.S.C. § 1334(a). In addition, the Court has jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11. § 1334(b). Plaintiffs brought this adversary proceeding to petition for a declaratory judgment that Stokes' state law claims in CDV 2012-156

were property of the estate purchased by Duncan in an auction sale approved by Order of this Court, without objection after notice. This Court has broad powers to enforce its orders under § 105(a). *Becker*, 17 Mont. B.R. at 77-78.

The Ninth Circuit BAP explained the test for "related to" jurisdiction in *In re ACI-HDT Supply Co.*, 205 B.R. 231, 237 (9th Cir. BAP 1997):

> In addition, the causes of action fit squarely within the case law authority that indicates that they are not in fact core. " '[If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding....' " [*In re Eastport Associates*, 935 F.2d 1071, 1076 (5th Cir. 1987)] (*quoting* [*In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)]).
>
> For similar reasons, we conclude that the state law claims do not fall within the non-core or "related to" jurisdiction of the bankruptcy court. 28 U.S.C. § 1334(c)(2). The Ninth Circuit has adopted the definition of "related to" jurisdiction expressed by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984). *See In re Fietz*, 852 F.2d 455, 457 (9th Cir.1988). Under that formulation, a civil proceeding is "related to" the bankruptcy if its outcome could conceivably have any effect on the bankruptcy estate. The proceeding need not be against the debtor or the debtor's property. It is sufficient if the "outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Fietz*, 852 F.2d at 457 (9th Cir.1988) (*quoting Pacor*, 743 F.2d at 994).
>
> The United States Supreme Court has also recognized the definition of "related to" jurisdiction formulated in *Pacor*. The Court noted that although Congress intended the "related to" language to evidence a jurisdictional "grant of some breadth," it was not intended to be "limitless." *Celotex Corporation v. Edwards*, 514 U.S. 300, [308], 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995).

The Supreme Court further observed that "related to" jurisdiction may extend further in a reorganization under Chapter 11 than in Chapter 7. *Celotex*, 514 U.S. at 310; *see In re Reinertson*, 224 B.R. 137, 147-48, 17 Mont. B.R. 21, 39-40 (Bankr. D. Mont. 1998), quoting

13

*ACI-HDT*. Applying the *Pacor* test to Plaintiffs' petition for declaratory judgment, this Court concludes that it falls within the "related to" jurisdiction of this Bankruptcy Court. Plaintiffs' purchase of the estate's interest in Stokes' state law malpractice claims invokes a substantive right created by the federal bankruptcy law, and is not one that could exist outside of bankruptcy in the state district court. *ACI-HDT*, 205 B.R. at 237. Further, the "outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Fietz*, 852 F.2d at 457 (*quoting Pacor*, 743 F.2d at 994). A declaratory judgment in Plaintiffs' favor could alter Stokes' rights, options or freedom of action in CDV 2012-157.

The Ninth Circuit in *Security Farms v. International Brotherhood of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997) cites *In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir. 1986) ("Actions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core'.")). Plaintiffs' petition for declaratory judgment is based solely on Duncan's purchase of the state law claims from the estate pursuant to bankruptcy law. Other Ninth Circuit authority notes that core proceedings are matters concerning administration of the estate and rights created by Title 11. *In re International Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994), *cert. denied Robertson v. Isomedix, Inc.*, 513 U.S. 1016, 115 S.Ct 577, 130 L.Ed.2d 493 (1994). This Court has held: "'If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding . . . .' [*In re Eastport Associates*, 935 F.2d 1071, 1076 (9th Cir.1987)] (*quoting* [*In re Wood*, 825 F.2d 90, 97 (5th Cir.1987)])". *Reinertson*, 224 B.R. at 147-48, quoting *ACI-HDT*, 205 B.R. at 237.

The Ninth Circuit discussed factors to be considered in determining whether a proceeding is core or non-core in *In re Goodman*, 991 F.2d 613, 617 (9th Cir. 1993):

> If a claim is not listed explicitly in § 157(b)(2) as a "core proceeding[ ]," we "consider[ ] factors such as whether the rights involved exist independent of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case." *Taxel v. Electronic Sports Research (In re Cinematronics, Inc.)*, 916 F.2d 1444, 1450 n. 5 (9th Cir.1990). Determinations regarding the nature and extent of the bankruptcy estate are fundamental functions of the bankruptcy court and would be "core proceedings." *John Hancock Mutual Life Ins. Co. v. Watson (In re Kincaid)*, 917 F.2d 1162, 1165 (9th Cir.1990).

Under the *Goodman* factors, the Plaintiffs' petition for declaratory judgment in this adversary proceeding involves enforcement of this Court's Order approving the sale of estate's state law claims, for which Plaintiff Duncan outbid Stokes at auction. Thus, while the state law claims for legal malpractice are not core proceedings, Plaintiffs' petition for declaratory judgment is a core proceeding because it involves a determination regarding the nature and extent of the bankruptcy estate, which is a fundamental function of the bankruptcy court. *Goodman*, 991 F.2d at 617.

In sum, this Court finds and concludes that Plaintiffs' petition for a declaratory judgment is a core proceeding under § 157(b)(2)(A) and (O) as it concerns the administration of the estate and enforcement of this Court's Order affecting the liquidation of assets of the estate.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the above-captioned adversary proceeding under 28 U.S.C. § 1334(b) as it is related to the above-captioned bankruptcy case.

2. Plaintiffs' petition for declaratory judgment is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (2)(O) concerning the administration of Debtor's estate and/or other proceeding

affecting the liquidation of assets of the estate; and under 11 U.S.C. § 105(a) to enforce or implement this Court's Order approving the sale of the estate's state law claims in CDV 2012-156 in the Montana First Judicial District Court, Lewis and Clark County.

3. The state law claims asserted by the Defendant/Debtor John Patrick Stokes in CDV 2012-156 are property of the bankruptcy estate under 11 U.S.C. § 541(a)(1) & (a)(7).

4. Plaintiffs have satisfied their burden to show that no genuine issues of material fact exist, and that they are entitled to summary judgment as a matter of law and a declaratory judgment that Stokes' state court claims were property of the estate purchased by Plaintiff Duncan.

**IT IS ORDERED** a separate Order and judgment shall be entered (1) overruling Defendant's objection and denying Defendant's motion to dismiss for lack of jurisdiction; (2) granting Plaintiffs' motion for summary judgment; and (3) entering Judgment in favor of the Plaintiffs Gregory Duncan and Kathleen M. Glover, and against the Defendant John Patrick Stokes, and providing that Stokes' state law claims against the Plaintiffs were property of the bankruptcy estate under 11 U.S.C. § 541(a) which were sold to the Plaintiff Gregory Duncan after notice at auction sale.

BY THE COURT

*Ralph B Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana